IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                              Case No.  15-10055-JWB

TEGAN C. GULLEY,

       Defendant.

## MEMORANDUM AND ORDER

This matter is before the court on Defendant's motion for release pending appeal.  (Doc. 92.)  The motion is fully briefed and ripe for decision.  (Docs. 92, 94.)  The motion is DENIED for the reasons stated herein.

**I.   Facts**

On August 24, 2015, Defendant pleaded guilty to possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).  (Doc. 32 at 1.)  He was sentenced to 77 months imprisonment and three years of supervised release.  (Doc. 40 at 2–3.) He was released from prison in October of 2020, and his term of supervised release officially began on October 23, 2020.  (Doc. 71 at 1.) However, on October 18, 2023, a Federal Probation Officer recommended that Defendant's term of supervision be revoked.  (Doc. 64 at 4.)  The probation officer recommended Defendant's term of supervision be revoked because he had violated the conditions of his supervised release.[1]  (Doc. 64 at 1–3.)  The court issued a summons for Defendant to appear before Magistrate Judge Severson on October 27, 2023.  (*Id.*)

---

[1] Defendant violated the conditions of his supervised release eight times.  (Doc. 76 at 1.)

Magistrate Judge Severson did not detain Defendant at the October 27 hearing because the government did not move for detention.  (Doc. 67.)  The court then set a final revocation hearing for November 30, 2023.  (D.E. 69.)  Defendant stipulated to his violations at the final revocation hearing.  (Doc. 74.)  However, at the revocation hearing, Defendant requested that the court delay the final disposition of the revocation hearing for six months. (Doc. 86 at 11:22–12:2.).  Because Defendant stipulated to the violations, the court considered sending him to prison that day for the violations. (*Id.* at 22:8–13.).   The court also considered granting him a second chance to demonstrate that he is a law-abiding citizen who is ready to complete his term of supervised release.  (*Id.* at 26:7–16.)  Under the second option, the court would delay the final disposition of the revocation for six months, and during that time, Defendant could not have any more issues with probation or additional violations. (*Id.*)  Defendant chose to delay the disposition by six months and attempt to demonstrate to the court that he is a law-abiding citizen who is ready to finish his supervised release. (*Id.* at 26:24–25.)

However, during the six-month period between the November revocation hearing and the delayed final disposition hearing in May, a Goddard Police officer and a Federal Probation officer interacted with Defendant on two separate occasions where he appeared to be under the influence of a controlled substance. (Doc. 84 at 40:7–11.) According to the federal probation officer, Defendant was most likely using the controlled substance K2.  (*Id.* at 4:7–11.) The substance avoided detection under standard drug tests, but it produced symptoms in Defendant that clearly indicated he was under the influence of something.  (*Id.* 4:16–20.)  Nevertheless, he did not accrue any new reported violations.  (*Id.* at 4:15.)

At the final disposition hearing in May, the court, relying on the reports from the Goddard Police officer and the Federal Probation officer, concluded that Defendant was in fact under the

influence of a mind-altering or intoxicating substance.  (*Id.* at 40:12–41:3.)  Because of this conduct, the court held Defendant accountable for his previous violations during his three-year supervised released term.  (*Id.* at 39:3–12, 41:4–7.)  The court then sentenced Defendant to a term of fifteen months imprisonment.  (Doc. 76 at 2.)

Defendant is appealing his sentence on the grounds that the court lacked jurisdiction to sentence him to fifteen months of imprisonment.  (Doc. 93-1 at 10.)  In the interim, Defendant has filed a motion to be released pending his appeal. (Doc. 92.)  The court considers his motion for release here.

## II.   Analysis

Defendant seeks release pending appeal under 18 U.S.C. § 3143(b)(1). This statute mandates detention pending appeal unless the court finds that (A) the "person is not likely to flee or pose a danger to the safety of any other person or the community if released," and (B) the appeal is not for the purpose of delay, raises a substantial question of law or fact, and that if the substantial question is decided favorably to defendant on appeal, that decision is likely to result in (i) "reversal," (ii) "an order for a new trial," (iii) "a sentence that does not include a term of imprisonment," or (iv) "a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process." 18 U.S.C. § 3143(b)(1)(A)–(B).  In this case, Defendant argues that he can establish all statutory requirements and that if he is successful on appeal, his revocation judgment will be reversed.

Defendant must first show by clear and convincing evidence that he poses no danger to the safety of any other person or the community and is not a flight risk.  *Id.*

He argues that he does not pose a danger to any other person or the community. (Doc. 92 at 7.)  He asserts that there has been an "implicit judicial determination" that he is not a danger

3

because he was not detained during the revocation proceedings. According to Defendant, this alleged implicit determination was "sound" because there was no motion to detain him during the six-month supervision term between November 2023 and May 2024. (Doc. 92 at 7.)

By contrast, the government raises two arguments for why Defendant is a danger to others and the community. (Doc. 94 at 3–4.) First, the government asserts that Defendant's arguments fail to show why Defendant is not a danger to the community. (*Id.*) Second, the government argues that the record, by clear and convincing evidence, shows that he is a danger to the community and to others. (*Id.*) After reviewing the record, the court finds that Defendant does pose a danger to the safety of others and the community.

One of Defendant's assertions is that Magistrate Judge Severson made an implicit judicial determination that Defendant is not dangerous. Upon review of Magistrate Judge Severson's order, the court concludes that it makes no determination whether Defendant is a danger to any person or the community. Instead, her notes indicate that Defendant was not detained because the government did not move for his detention. (Doc. 67.) In any event, Magistrate Judge Severson's determination, made six months prior to the court's revocation judgment, has no bearing on this court's finding as to whether Defendant is a danger to others and the community pending appeal.

Defendant next argues that he should be released because neither the government nor probation moved for him to be detained between the November revocation hearing and the delayed final disposition hearing in May. Defendant's argument implies that because the government did not file any motions for renewed detainment during this deferred disposition period, Defendant had no issues during this six-month period and fully complied with the conditions of his supervision. (Doc. 92 at 7.) But that is not the case. The evidence indicates that Defendant was under the influence of a "mind-altering substance" during two interactions with law enforcement:

the first on March 4, 2024, when he interacted with the Goddard, Kansas police; and the second when he interacted with a federal probation officer on March 5, 2024.  (Doc. 84 at 40:7–11.) According to the federal probation officer, Defendant was most likely under the influence of K2. (*Id.* at 4:7–11.)  Thus, Defendant's argument that he had no issues during the November and May hearings is unpersuasive, and frankly, incorrect.

In addition to Defendant's faulty arguments, the court finds by clear and convincing evidence that Defendant poses a danger to the safety of others and the community.  Based on the Second Amended Violation Report (Doc. 71), throughout the duration of Defendant's three-year supervised release period, he acted violently toward probation officers, police officers, and even his girlfriend Ms. Portia Hughes. On September 21, 2021, federal probation officers arrived unannounced at Ms. Hughes' residence, where Defendant and Ms. Hughes were located.  (Doc. 71 ¶ 10.)  When the probation officer arrived, Defendant went inside the residence and refused contact with him; shortly thereafter, he came outside and was anxious and irate, arguing loudly and speaking over the officer. (*Id.*) Wichita Police were also dispatched to a domestic violence disturbance between Defendant and Ms. Hughes on March 23, 2023.  (*Id.* ¶ 23.)  Ms. Hughes reported to the police that Defendant "was acting strangely, sweating profusely, and yelling." (*Id.*) When police officers tried to speak with Defendant, he resisted, paced the room, and was erratic. (*Id.*)  The following day, Wichita Police reported to Ms. Hughes' address again because of another domestic disturbance call.  (*Id.* ¶ 24.)  This time, Ms. Hughes reported that Defendant was not allowing her to leave.  (*Id.*)  When the officers arrived, Defendant was angry.  (*Id.*)  The responding officers stood in between Defendant and Ms. Hughes, prompting Defendant to push past the officers by pumping his hands in the air and chest bumping one of the officers.  (*Id.*)  At this point, the officers attempted to arrest Defendant.  (*Id.*) When they finally handcuffed him, he dropped to

the ground, refused to stand up, and began flailing and spitting on the arresting officers.  (*Id.*)  He also began headbutting the officer's leg, and when they loaded him into the transport van, he grabbed the arresting officer's pant leg.  (*Id.*)  Defendant was booked for obstructing/resisting arrest and two counts of battery on a law enforcement officer.  (*Id.*)

In addition to being violent toward law enforcement officers and his girlfriend Ms. Hughes, he also repeatedly violated the terms of his supervised release.  On February 25, 2021, Defendant's urine tested positive for the drug Phencyclidine.  (*Id.* ¶ 5.)  Defendant claimed that the Phencyclidine in his system was a result of being drugged, (*id.*), but he could not produce any proof for this claim.  (*Id.* ¶ 8.)  Then on March 16, 2022, Defendant was pulled over by Wichita police officers and was found driving with an open alcoholic beverage.  (*Id.* ¶16.)  During this same traffic stop, police found two bags of a red substance—which they believed to be the drug K2.[2]  (*Id.*)  Defendant was arrested for driving while suspended and was later found guilty for that offense.  (*Id.* ¶¶ 16, 18.)  And on October 4, 2023, Defendant's urine analysis tested positive for marijuana.  (*Id.* ¶ 30.)

Taking all this into consideration, Defendant poses a danger to others and the community. The record indicates he has been unable to stay away from drugs since being released from prison. He has also demonstrated a propensity for violent conduct—at one point being arrested for assault and battery against a law enforcement officer.  Moreover, during his term of supervised release, his girlfriend called the police two times to report a domestic disturbance.  On one of those occasions, Defendant appeared intoxicated on drugs and had to be sent to the hospital for treatment. The next day, he returned to his girlfriend's house and would not let her leave.  Defendant's

---

[2] The test results for the red substance in the bags was never received.

concurrent use of drugs, erratic and angry behavior, and his conduct toward and in front of Miss Hughes leads this court to conclude, at the very least, that he is a danger to her.

However, that is not all. The record indicates that Defendant has little to no regard for the safety of local and federal law enforcement personnel. He unabashedly yelled at them, disregarded their orders, and during one altercation, physically attacked an officer. Again, this evidence alone demonstrates that Defendant is a danger to law enforcement.

The court continues, though. Defendant's drug use and unlawful driving indicates that he is a danger to the community writ large. Defendant was caught unlawfully driving with an open alcoholic beverage in his car. The court notes that there is no evidence in the record indicating that Defendant was drinking and driving, but his repeated unlawful drug use and driving with an open alcoholic beverage leads this court to conclude that there is a high likelihood that Defendant would drive under the influence of alcohol or a controlled substance. Moreover, "[t]he concern about safety is to be given a broader construction than the mere danger of physical violence. Safety to the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Kroeker*, No. 22-3092, 2022 WL 2610344, at *4 (10th Cir. July 8, 2022) (quoting *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989)) (quotation marks omitted). That Defendant might engage in the criminal activity of driving while under the influence of alcohol or a controlled substance is behavior that would be quite dangerous to fellow drivers and to pedestrians on sidewalks and street crossings.

Thus, the court concludes that Defendant is a danger to Miss Hughes, law enforcement personnel, and the community writ large. Because the court finds that Defendant is a danger to others and the community, the court does not reach the issues of whether the appeal is for the

purpose of delay, raises a substantial question of law or fact, and that if the substantial question is decided favorably to Defendant on appeal, that decision is likely to result in a reversal.

Ultimately in this case the court, at Defendant's request, decided to extend him a little grace at the end of his term of supervision by giving him an opportunity to avoid revocation by deferring final disposition and giving him a chance to show that he could stay out of trouble and stay off drugs for a few months. Rather than rising to the occasion, he squandered that opportunity. And instead of accepting the consequences that he knew were coming, he decided to appeal the court's ruling, arguing instead that the court had no authority to do what he asked me to do. Resolution of that "heads-I-win-tails-you-lose" strategy now lies with the Court of Appeals. Suffice it to say that, under 18 U.S.C. § 3143(b), it is Defendant's burden to show that he is entitled to release. This he has failed to do.

## III.    Conclusion

Therefore, Defendant motion for release pending appeal (Doc. 92) is DENIED.

IT IS SO ORDERED. Dated this 22nd day of August 2024.

s/ John Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE

8